1
2
3
4
5
6
7
8
9        **UNITED STATES DISTRICT COURT**
10       **SOUTHERN DISTRICT OF CALIFORNIA**
11

12   EPICENTRX, INC.,                          Case No. 21-cv-1950-MMA-DDL
13                               Plaintiff,
                                               **ORDER GRANTING IN PART AND**
14   v.                                        **DENYING IN PART MOTION FOR**
                                               **SANCTIONS;**
15   JAMES BIANCO, M.D.,
16                              Defendant.      [Doc. No. 87]
17                                             **GRANTING DEFENDANT'S**
18                                             **MOTION FOR SUMMARY**
                                               **JUDGMENT; AND**
19
20                                             [Doc. No. 68]
21                                             **DENYING MOTION TO**
22                                             **WITHDRAW AS MOOT**
23                                             [Doc. No. 84]
24
25
26
27
28

Plaintiff EpicentRx, Inc. ("Plaintiff" or "EpicentRx") brings this action against Defendant James A. Bianco, M.D. ("Defendant" or "Bianco") for breach of fiduciary duty, intentional and negligent interference with prospective economic advantage, and business disparagement/trade libel.  *See* Doc. No. 1-2 ("Compl.").  Pending before the Court is Bianco's motion for summary judgment, *see* Do. No. 68, EpicentRx's counsel's motion to withdraw, *see* Doc. No. 84, and Bianco's motion for evidentiary sanctions, *see* Doc. No. 87.  The Court finds these matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  For the reasons set forth below, the Court **GRANTS IN PART** Bianco's motion for sanctions, **GRANTS** his motion for summary judgment, and **DENIES** EpicentRx's counsel's motion to withdraw **as moot**.

# I. BACKGROUND

## A.    Factual Background[1]

This lawsuit is the result of a breakdown in the relationship between Plaintiff EpicentRx and Prothex, Inc.  Defendant Bianco was Prothex's Chief Business Officer during the time of the events that gave rise to this litigation.  Doc. No. 68-2 ("Bianco Decl.") ¶ 2.

Both EpicentRx and Prothex either are or were engaged in at least cancer-related drug treatment research.  *See, e.g.*, SS Nos. 1, 2.  Sometime in or around 2018, Donna Tempel, then-CEO of Drais Pharmaceuticals, which later became Prothex, obtained licensing rights from EpicentRx to develop a drug called RRx-001.  SS Nos. 2, 3.  In exchange, EpicentRx received a generous but non-controlling equity stake in Prothex.  SS

---

[1] These material facts are taken from Defendant's Separate Statement of Undisputed Material Facts and Plaintiff's responses thereto, Plaintiff's Additional Statement of Undisputed Material Facts and Defendants' responses thereto, *see* Doc. No. 80 at 2–57 ("Separate Statement" or "SS"), as well as the parties' supporting declarations and exhibits.  These facts are undisputed unless otherwise noted.  To the extent a party disputes a fact but does not provide a relevant or evidentiary basis or explanation for doing so, the Court presumes the fact is undisputed.  Particular material facts that are not recited in this section may be discussed *infra*.

No. 4.  InterWest Partners LLC ("InterWest") was a majority shareholder of both companies.  *Id.*  The apparent purpose of this agreement was for Prothex to put RRx-001 through a clinical trial, report the results for peer review, and potentially file an "IND"[2] application with the Food & Drug Administration ("FDA").  SS No. 19.

In preparing its IND application, Prothex referenced EpicentRx's past submissions to the FDA.  SS Nos. 9, 11; Doc. No. 68-3 ("Tempel Decl.") ¶ 7.  The parties dispute whether EpicentRx's prior FDA submissions contained errors, misrepresentations, and/or deficiencies.  SS Nos. 9, 10.  Ultimately, regardless of the reasons, Prothex did not submit an IND application.  What ensued became a struggle of who should run the two companies and control RRx-001.

Bianco and Tempel sought to have Prothex buy InterWest's controlling share of EpicentRx.  SS No. 18.  The idea was to combine the two companies and have Prothex's management run the new entity.  SS Nos. 19, 38.  However, EpicentRx sought to purchase Prothex's assets, including the licensing rights to RRx-001, and keep EpicentRx management in charge.  SS. No. 21.  During this time there were several people involved in the discussions, including: Bianco and Tempel on behalf of Prothex; James Brown, an EpicentRx shareholder and former EpicentRx Director, *see* SS No. 23, and InterWest partner Gil Kliman, *see* SS Nos. 17, 20, 24–25.

On March 4, 2021, EpicentRx sent Prothex a Letter of Intent, proposing the asset purchase.  SS No. 53.  On March 15, 2021, Prothex sent EpicentRx its own Indication of Interest ("IOI") letter, proposing the merger.  SS No. 55; Doc. No. 68-1 ("Benedicto Decl.") Ex. 2.

Ultimately, EpicentRx won the battle.  In May 2021, Prothex and EpicentRx agreed for the latter to purchase the former's assets for $13 million.  SS No. 26.  During

---

[2] The Court takes judicial notice of the fact that an "IND" refers to an Investigational New Drug Application.  *See* U.S. Food & Drug Administration, Investigational New Drug (IND) Application, *available at* https://www.fda.gov/drugs/types-applications/investigational-new-drug-ind-application (last visited Sept. 28, 2023).

due diligence, Prothex provided documents to EpicentRx.  Relevant here, this document exchange included a "whistleblower" letter, authored by Bianco and contributed to by Brown (the "Whistleblower Letter"), as well as two letters of intent ("LOI"), also authored by Bianco with input from Brown and Tempel.  Generally speaking, it is EpicentRx's receipt of four documents from Prothex that resulted in this lawsuit: the IOI; the Whistleblower Letter; and the two LOIs.

### 1.   The IOI

Bianco authored the IOI, with help from Tempel and Brown.  *See* SS Nos. 36, 39–40.  The IOI proposed that EpicentRx would acquire all of the outstanding capital stock of Prothex, resulting in EpicentRx's shareholders holding an estimated 67.75% of the combined entity, which was to be run by Tempel and Bianco.  Benedicto Ex. 2.  Attached to the IOI (and included therein for purposes of this Order), was a slide deck.  *Id.*  In particular, the slide deck includes a description of various EpicentRx Directors and Officers: Chief Executive Officer Dr. Tony Reid, Chief Financial Officer Dr. Franck Brinkhaus, Chief Medical Officer Dr. Bryan Oronsky, and Director Scott Caroen.  *Id.*  EpicentRx takes exception to the IOI's description of these persons, their experience, and their personal characteristics.  SS No. 59–60.

On March 15, 2021, Tempel emailed the IOI to Dr. Reid.  Benedicto Ex. 2.  Having received no response from Dr. Reid, on March 24, 2021, Tempel sent a follow-up email asking if he had circulated the IOI to EpicentRx's board.  Benedicto Ex. 10.  Again receiving no response, on March 29, 2021, Tempel emailed the IOI to the individuals she believed were members of EpicentRx's Board: Karl Fusseis, John Cleary, Khaled Nasr, and Dr. Dennis Carson.  Benedicto Ex. 11; Tempel Decl. ¶ 12.

### 2.   The Whistleblower Letter

The Whistleblower Letter is dated April 1, 2021.  Benedicto Ex. 5.  The Letter is addressed to the EpicentRx Board, and concerns allegations of senior management having misrepresented the results of its clinical trials to its investors and the FDA.  *Id.*; SS No. 29.  According to Bianco, he initially drafted the Letter for the Securities and

Exchange Commission. Bianco Decl. ¶ 24. When Bianco told Brown about it, Brown indicated he might be interested in sending the Letter to the EpicentRx himself, asking that it conduct an internal investigation. *Id.*; SS Nos. 28, 43. The Whistleblower Letter was that revised version, which Bianco sent to Brown. Bianco Decl. ¶ 24. It is undisputed that no one else received the Letter until it was produced to EpicentRx during due diligence. *Id.*; SS Nos. 27, 30.

### 3. The First and Second LOIs

In mid-April 2021, Bianco authored the First LOI on Brown's behalf. Benedicto Ex. 6; Bianco Decl. ¶ 29. The First LOI is addressed to Kliman, and includes a proposal for Brown and others to purchase InterWest's controlling stake in EpicentRx. Benedicto Ex. 6; Bianco Decl. ¶ 29. The Second LOI is another version of this same letter to Kliman and is dated April 23, 2021. Benedicto Ex. 7. It was intended that Brown would send the LOIs to InterWest. SS Nos. 44, 45. So Bianco sent the First and Second LOIs to Brown, who then sent them to Kliman. Bianco Decl. ¶ 29.

In summary, EpicentRx received the IOI in March 2021, Benedicto Ex. 11, and ignored it. In June 2021, during due diligence, EpicentRx received the Whistleblower Letter and LOIs. Doc. No. 78-3 ("Caroen Decl.") ¶ 12. EpicentRx made no inquiry as to whether these documents were disseminated to anyone apart from the recipients identified above. SS No. 34. Rather, EpicentRx filed suit two months later.

## B. Procedural History

On August 13, 2021, EpicentRx filed a Complaint against Bianco in the California Superior Court, *see* St. Ct. Case No. 37-2021-00039267-CU-BT-CTL, asserting the following claims: (1) breach of fiduciary duty; (2) intentional interference with prospective economic advantage; (3) negligent interference with prospective economic advantage; and (4) business disparagement/trade libel. *See* Compl.[3]

---

[3] The Court notes that the Complaint attached to Defendants' Notice of Removal contains redactions, and that it has not received an unredacted version of the Complaint to date.

On November 15, 2021, Bianco removed the action to this Court pursuant to 28 U.S.C. § 1332. *See* Doc. No. 1. On February 28, 2022, Bianco filed an Answer along with a Countercomplaint and a third-party Complaint (the "Countercomplaint"). *See* Doc. No. 2. By way of the Countercomplaint, Bianco pleaded the following: (1) intentional interference with a prospective economic advantage against EpicentRx and third-party defendants Dr. Reid, InterWest, Kliman, and Nasr; (2) negligent misrepresentation against Dr. Reid and Nasr; (3) breach of contract against InterWest, Kliman, and Nasr; and (4) breach of the covenant of good faith and fair dealing against Interwest, Kliman, and Nasr. *See id.*

On March 15, 2023, Bianco filed an Amended Answer and Countercomplaint ("Amended Countercomplaint"). *See* Doc. No. 15. By way of the Amended Countercomplaint, Tempel was added as a third-party plaintiff on all of the claims, and Dr. Oronsky was named as a defendant on the first counterclaim.[4] *See id.*

On August 23, 2022, EpicentRx filed a motion, requesting that the Court order Bianco and Tempel to show cause why the Amended Countercomplaint should not be dismissed for failure to serve. *See* Doc. No. 26. At that time, more than four months had passed since Bianco and Tempel filed their Amended Countercomplaint, and EpicentRx and the third-party defendants had not yet been served. The Court granted EpicentRx's motion and issued an order to show cause ("OSC"). *See* Doc. No. 27. In response to the OSC, Bianco and Tempel voluntarily dismissed the Amended Countercomplaint. *See* Doc. No. 29. As a result, only EpicentRx's four causes of action against Bianco remain.

On August 4, 2023, Bianco filed a motion for summary judgment, *see* Doc. No. 68, and EpicentRx filed a motion for partial summary judgment, *See* Doc. No. 67. The following day, Bianco filed his separate statement of material facts. *See* Doc. No. 69. Thereafter, the parties jointly moved the Court to reset the briefing schedule. *See* Doc.

---

[4] Although Dr. Oronsky was listed as a defendant in the caption of the Countercomplaint, no claims were pleaded against him.

No. 70.  According to the joint motion, EpicentRx had inadvertently filed an unfinished draft of its motion.  *Id.*  The parties agreed to a deadline for EpicentRx to file a corrected version of its motion, as well as an extended briefing schedule.  *Id.*  The Court granted the motion.  *See* Doc. No. 71.

EpicentRx did not file its corrected motion by the September 2, 2023 deadline.[5] Rather on September 19, 2023—the deadline for filing oppositions—EpicentRx filed a notice of withdrawal of its motion, "without prejudice to refiling, should the Court permit leave to do so."  Doc. No. 72 at 2.[6]  EpicentRx never sought leave of the Court to refile its motion.

Also on September 19, EpicentRx filed its opposition to Bianco's motion.  *See* Doc. No. 73.  The opposition consisted of a brief as well as evidentiary objections.  *Id.* Later that same day, EpicentRx filed a corrected version of its opposition, now including redacted a memorandum of points and authorities, declarations, exhibits, and a responding separate statement, *see* Doc. No. 74, along with a motion to file unredacted versions of the documents under seal, *see* Doc. No. 75.  The Court granted the motion, *see* Doc. No. 77, and EpicentRx's opposition was filed under seal, *see* Doc. No. 78.

Bianco filed his reply on the deadline to do so: September 25, 2023.  *See* Doc. No. 79.  The following day, Bianco filed his separate statement reply, *see* Doc. No. 80, as well as objections to EpicentRx's opposition evidence, *see* Doc. No. 81.  On September 29, 2023, Bianco filed a corrected reply.  Doc. No. 82.  On September 30, EpicentRx's counsel filed an affidavit, explaining that the corrected opposition was nevertheless incomplete or incorrect.  Doc. No. 83.  Plaintiff's counsel attaches to his affidavit portions of Tempel's deposition transcript.[7]  *Id.*

---

[5] September 2, 2023 was a Saturday.  Nonetheless, because the parties stipulated to this date as the deadline, *see* Doc. No. 70 at 3, 4, the Court set September 2 as the deadline.

[6] Unless otherwise noted, all citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

[7] The parties have filed a combined eight (8) "corrected" or otherwise late filings in connection with one motion for summary judgment.  *See* Doc. Nos. 69, 73, 74, 80, 81, 82, 83, 85.  Neither the Federal Rules

On October 10, 2023, EpicentRx's counsel Brown Neri Smith & Khan, LLP ("BNSK") filed a motion to withdraw as counsel of record. *See* Doc. No. 84. Shortly thereafter, a motion to withdraw filed by BNSK in Plaintiff's unrelated case, *EpicentRx, Inc. v. Carter*, Case No. 20-cv-1058-JO-DDL, was denied by the presiding judge. Pursuant to the Court's orders, *see* Doc. Nos. 86, 89, 91, 93, BNSK filed several status reports regarding its requested withdrawal, *see* Doc. Nos. 88, 90, 95. So far as the Court can surmise from the status reports, BNSK is still working with EpicentRx to resolve the outstanding financial obligations.

While BNSK's motion to withdraw was still pending, on October 17, 2023, Defendant filed a motion to exclude evidence as a discovery sanction. *See* Doc. No. 87. That motion is fully briefed. *See* Doc. Nos. 94, 96.

## II. EVIDENTIARY OBJECTIONS

Both parties have lodged a number of evidentiary objections to the other's declarations. *See* Doc. Nos. 74-5, 81. The Court begins with the general position that most, if not all, evidentiary objections are inappropriate at summary judgment. First, because at summary judgment, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). Federal Rule of Civil Procedure[8] 56(c) only requires that "evidence 'would be admissible,' not that it presently be admissible." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964 n.7 (9th Cir. 2011) ("Rule 56 is precisely worded to exclude evidence only if it's clear that it cannot be presented in an admissible form at trial."). As a result, "[t]he focus is on the admissibility of the evidence's contents, not its form." *Estate of Hernandez—Rojas ex rel. Hernandez*

---

nor this Court's Local Rules authorize the filing of "corrected" version of documents. Nor do the Rules permit late filings without leave of the Court. The parties and the Court would be better served by withdrawing incorrect filings and seeking leave of the Court when necessary to do so.

[8] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

*v. United States*, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citing *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004)).

Second, Rule 56 requires that there be no genuine issue of material fact for trial—meaning that courts reviewing summary judgment motions are only to consider relevant evidence. *See Sandoval v. Cty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (explaining that "if evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, . . . relevant" and that "if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling").

Consequently, many objections, such as lack of personal knowledge, speculation, hearsay, best evidence, and relevance, are duplicative of the summary judgment standard itself. *See id.*; *see also All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12cv146 L (BLM), 2014 U.S. Dist. LEXIS 44798, at *44 (S.D. Cal. Mar. 31, 2014) (citing *Burch*, 433 F. Supp. 2d at 1119–20). Therefore, "parties briefing summary judgment motions would be better served to simply *argue* the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections." *Sandoval*, 985 F.3d at 665 (quoting *Burch*, 43 F. Supp. 2d at 1119).

The Court, in performing its duty on summary judgment, weighs the relevancy and considers the admissibility of the content of the evidence. All evidentiary objections to evidence material to the Court's ruling will be addressed below. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (explaining that on summary judgment, the District Court "must also rule on evidentiary objections that are material to its ruling"). Otherwise, the Court **OVERRULES** the parties' evidentiary objections without prejudice.

## III. MOTION FOR EVIDENTIARY SANCTIONS

The Court next addresses the preliminary matter of Bianco's motion for evidentiary sanctions. *See* Doc. No. 87. Bianco asks the Court to exclude certain of

EpicentRx's evidence pursuant to Rule 37 for failure to disclose the evidence during discovery as is required by Rule 26.  Namely, Bianco seeks exclusion of: (1) testimony from or about fact witnesses not identified by name in the Complaint or described in EpicentRx's written discovery responses, specifically AVV, InterWest (on the subject of damages), Meaghan Stirn, or any other undisclosed witness; (2) evidence that a person not identified in the Complaint or in written discovery responses received an allegedly defamatory or disparaging statement; (3) evidence of alleged statements or actions by Bianco not alleged in the Complaint or identified in written discovery; and (4) evidence of damages not disclosed in discovery. *Id.* at 15–16.  Bianco also seeks fees and expenses pursuant to Rule 37(c)(2) for EpicentRx's failure to respond to his requests for admission ("RFA").  *Id.* at 16.

Rule 26 requires that a party initially disclose, among other things, witnesses and a computation of damages.  Fed. R. Civ. P. 26(a)(1)(A).  Parties are required to supplement their initial disclosures.  Fed. R. Civ. P. 26(e).  Rule 37, in turn, calls for the exclusion of any evidence or information that a party fails to disclose as required by Rule 26(a) and (e).  Fed. R. Civ. P. 37(c)(1); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).  "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence."  *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  "As the Rule plainly states, litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless."  *Id.* (quoting *Yeti*, 259 F.3d at 1106).  "The automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)—Rule 37(c)(1) authorizes appropriate sanctions '[i]n addition to or instead of [exclusion].'"  *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).  "Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless."  *Id.* (citing *Yeti*, 259 F.3d at 1106–07).

Moreover, Rule 37(c)(2) provides that where "a party fails to admit what is requested under Rule 36 and [ ] the requesting party later proves . . . the matter true," the Court is authorized to award the requesting party reasonable attorney's fees and expenses "incurred in making that proof." Fed. R. Civ. P. 37(c)(2). The Court "must so order" such expenses unless one of four exceptions is present. Fed R. Civ. P. 37(c)(2)(A)–(D). Those exceptions are: (1) that the request was objectionable pursuant to Rule 36(a); (2) the admission sought was of no substantial importance; (3) the party who refused to made the admission has reasonable ground to believe he might prevail on the matter; or (4) "there was other good reason for the failure to admit." *Id.* With respect to the third exception, the Advisory Committee Notes advise that "the true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Fed. R. Civ. P. 37(c) advisory committee's notes (1970 amendment).

Additionally, the Civil Local Rules state:

> The Court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues. If counsel for the moving party seeks to arrange such a conference and counsel for the party against whom the motion is made willfully refuses or fails to meet and confer, the judge (in absence of a prior order dispensing good cause with such a meeting) may order a payment of reasonable expenses, including attorney's fees, pursuant to Rule 37, Fed. R. Civ. P. and Civil Local Rule 83.1. If counsel have offices in the same county, they are to meet in person. If counsel have offices in different counties, they are to confer by telephone. Under no circumstances may the parties satisfy the meet and confer requirement by exchanging written correspondence.

CivLR 26.1.a. A party who files a motion pursuant to Rules 26 through 37 is also required to file and serve a certification of compliance with this rule. CivLR 26.1.b.

## A. Scheduling Orders and Discovery

Before turning to Bianco's motion, the Court must address a matter raised in the course of the briefing on this motion and so provides the relevant discovery timeline in this case as reflected by court orders on the docket.

On April 18, 2022, the then-assigned Magistrate Judge issued the first Rule 16 Scheduling Order.  *See* Doc. No. 17.  Relevant here, the fact discovery cutoff was set for October 24, 2022, and the expert discovery cutoff was set for February 21, 2023.  *Id.*  On October 5, 2022, the parties filed a joint motion to extend the fact discovery cutoff to December 19, 2022.  *See* Doc. No. 32.  Magistrate Judge David D. Leshner granted the joint motion and issued an Amended Scheduling Order.  *See* Doc. No. 39.  Namely, Judge Leshner reset the fact discovery and expert discovery cutoffs to December 19, 2022 and March 10, 2023, respectively.  *Id.*

Thereafter, the parties filed three joint motions to extend various discovery deadlines, *see* Doc. Nos. 49, 53, 61, all of which Judge Leshner granted, *see* Doc. Nos. 51, 54, 62.  Pursuant to the Amended Scheduling Orders, fact discovery, for deposition purposes only, closed on April 7, 2023, *see* Doc. No. 51, and the expert discovery cutoff was July 28, 2023, *see* Doc. No. 62.  Dispositive motions were due on August 4, 2023.  *See* Doc. No. 66.

In opposition to Bianco's motion for sanctions, EpicentRx references an apparent agreement among the parties to suspend expert discovery, stating that "expert disclosures and depositions remain pending."  Doc. No. 94 at 4.  Its position that an out-of-court agreement existed is seemingly supported by Bianco's evidence.  *See* Doc. No. 87-1 ("Carvalho Decl.") Ex. 14 (email exchange from Bianco's counsel to EpicentRx's counsel proposing expert discovery deadlines for September 2023).  According to EpicentRx, Bianco "will be able to depose EpicentRx's damages expert on the amount, methodology, and computation of damages."  Doc. No. 94 at 4–5.

The notion that expert discovery remains outstanding raises significant concerns. Judge Leshner's Scheduling Orders cannot be extended by mere agreement among the parties.  Rather, in order to extend the expert discovery deadlines, the parties were required to file a motion demonstrating good cause and obtain Judge Leshner's consent. Fed. R. Civ. P. 16(b)(4).  They did not, and the time for doing so has long since expired. Even more concerning, in opposition to Bianco's motion for summary judgment, in

which he seeks judgment for, among other things, lack of damages, EpicentRx did not file a Rule 56(d) motion or otherwise make any suggestion that relevant discovery, including on damages, remained outstanding.

Consequently, EpicentRx's position on expert discovery and damages is a nonstarter. So far as the Court can surmise, EpicentRx did not disclose any expert by the July 12, 2023 deadline. EpicentRx has offered no expert report on damages in opposition to summary judgment, and so the Court presumes there is none. There will be no deposition of any expert or fact witness that has not already been taken. Discovery is closed and has been since July 2023.

## B. Meet and Confer Requirement

The parties first dispute whether Bianco was required to comply with Civil Local Rule 26.1.a prior to filing his motion and if so, whether the meet and confer requirement was met here. Beginning with the latter, the Court finds that Bianco's efforts do not amount to either a meet and confer (during the course of discovery) or an earnest effort to do so. Moreover, Bianco does not submit a certificate of compliance with the Civil Local Rule along with his motion. *See* CivLR 26.1.b. Accordingly, as Bianco has failed to comply with Civil Local Rule 26.1.b, the Court turns to the applicability of the Local Rule.

According to Bianco, Civil Local Rule 26.1.a does not apply because Rule 37(c) is automatic, and because his motion is not one seeking to compel production of information. The Court begins with *Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175 (9th Cir. 2008). In *Hoffman*, the Ninth Circuit had occasion to consider a Central District local rule, which provided that a party seeking to file a "motion relating to discovery pursuant to [Rules] 26–37" must first meet and confer. *Id.* at 1179. The Ninth Circuit concluded that a motion in limine seeking to exclude evidence pursuant to Rule 37 was not a motion relating to discovery encompassed by the local rule, and that "[a]ny local rule requiring a conference prior to the court's imposition of sanctions under Rule 37(c) would be inconsistent with Rule 37(c) and, therefore, unenforceable." *Id.*

On the other hand, several courts within this district have denied Rule 37(c) motions for failure to comply with Civil Local Rule 26.1.a. *See, e.g.*, *Tijerina v. Alaska Airlines, Inc.*, No. 22-CV-203 JLS (BGS), 2023 U.S. Dist. LEXIS 103876, at *17 (S.D. Cal. June 14, 2023); *Araujo v. Coachella Valley Water Dist.*, No. 3:20-cv-01800-AJB-RBM, 2022 U.S. Dist. LEXIS 87704, at *10 (S.D. Cal. Mar. 11, 2022); *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 15-CV-700 JLS (NLS), 2016 U.S. Dist. LEXIS 174420, at *14–15 (S.D. Cal. Dec. 16, 2016).

It is difficult to reconcile application of Civil Local Rule 26.a.1 with the Ninth Circuit guidance in *Hoffman*.  The reasoning in *Hoffman*—that a local rule requiring a conference before the Court may impose Rule 37(c) sanctions would be inconsistent with the Rule itself—is not clearly based upon the distinguishable discovery-related language of the Central District's local rule.  Nevertheless, the Court agrees that application of Civil Local Rule 26.1.a in this instance would be inconsistent with Rule 37 and therefore pursuant to both *Hoffman* and this Court's Civil Local Rule 1.1.c, the Court finds that Bianco's failure to meet and confer does not prevent the Court from considering his motion.

**C.     Failure to Disclose Witnesses, Evidence, and Computation of Damages**

As noted above, Bianco seeks a sanction excluding various witnesses and evidence, both identified and unidentified in his motion, for failure to disclose this information throughout the course of discovery.  The sanction Bianco seeks is not so "narrowly tailored" as he contends.  Doc. No. 87 at 15.  Nonetheless, the Court considers each of his requests.

*1.     Undisclosed Witnesses*

First, Bianco asks the Court to exclude "testimony from or about fact witnesses not identified by name in the Complaint or described in EpicentRx's written discovery responses, specifically AVV, InterWest (on the subject of damages), Meaghan Stirn, or any other undisclosed witness."  Doc. No. 87 at 15–16.  According to Bianco, EpicentRx did not disclose Dr. Carson, Meaghan Stirn, InterWest (on the issue of damages), and

AVV as witnesses.  *See id.*  Rule 26(a)(1)(A)(i) mandates that each party provide the other, "without awaiting a discovery request," the name and contact information of each individual likely to have discoverable information along with the subjects of that information.  Fed. R. Civ. P. 26(a)(1)(A)(i).  Such information is discoverable in the sense that "the disclosing party may use [it] to support its claims or defenses . . . ."  *Id.*  Rule 26(e) in turn mandates the supplementation of a Rule 26(a) disclosure that is later determined to be incomplete or incorrect, where the "corrective information has not otherwise been made known" during the course of discovery.  Fed. R. Civ. P. 26(e)(1)(A).  Rule 37(c)(1) prohibits the nondisclosing party from using that witness "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

To determine whether a violation is substantially justified or harmless, courts consider the following factors: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."  *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *see also Nat'l Fire Prot. Ass'n, Inc. v. Upcodes, Inc.*, No. 2:21-cv-05262-SPG-E, 2023 U.S. Dist. LEXIS 151744, at *18 (C.D. Cal. Aug. 8, 2023) (collecting cases).  Further, discovery conduct may be deemed substantially justified "if there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action."  *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982), *overruled on other grounds as stated by Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055 n.2 (9th Cir. 2007); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Additionally, because exclusion is a harsh result, courts analyze several factors when deciding whether to impose such a sanction: "1) the public's interest in expeditious resolution of litigation, 2) the court's need to manage its docket, 3) the risk of prejudice to the defendants, 4) the public policy favoring disposition of cases on their merits, [and] 5) the availability of less

drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction. Thus the key factors are prejudice and the availability of lesser sanctions." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal citation and quotation marks omitted).  Finally, courts consider whether the failure to disclose was the result of "willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of the Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012).

At this juncture, it appears plain that EpicentRx did not comply with either Rule 26(a) or 26(e) in any sense.  In an email dated January 18, 2023, EpicentRx's counsel wrote that he had "just noticed that neither party exchanged their Rule 26 disclosures.  EpicentRx will rectify that as soon as possible, and Defendant must do so as well."  Carvalho Decl. Ex. 3.  But as Bianco explains, he did provide Rule 26(a)(1)(A) disclosures, at least by November 2022.  Carvalho Decl. Ex. 1.  EpicentRx did not and does not argue otherwise.  In opposition, EpicentRx largely ignores the fact that it is required to disclose witnesses with discoverable information and therefore that Bianco did not explicitly request certain information, or did so after the discovery cutoff, is of no consequence.

First, Bianco takes issue with EpicentRx's failure to identify InterWest as an investor whose relationship with EpicentRx was damaged due to Bianco's conduct.  In its Complaint, EpicentRx alleges that Bianco's conduct damaged its relationship with investors but identifies none by name.  *See, e.g.*, Compl. ¶¶ 60, 66.  The Court reiterates that EpicentRx made no Rule 26(a) disclosures: EpicentRx disclosed no witnesses and did not name any investor.  As a result, Bianco sought this information by way of interrogatory.  *See* Carvalho Decl. Ex. 4, Interrogatory No. 7. ("Identify the EpicentRx Board members and investors whose relationships with EpicentRx were interfered with, disrupted or damaged as alleged in ¶¶ 64-67 of the Complaint."); *see also id.* at Ex. 4, Interrogatory No. 15.  Rather than meaningfully respond, EpicentRx simply "refer[red] to the Members of the Board that were in place during the time period at issue in the

Complaint, as well as its investors and potential investors, all of which Defendant is well aware." *Id.* Regardless of whether Bianco was "well aware" of the composition of EpicentRx's Board, or who was an investor, it is EpicentRx's obligation to inform Bianco of which of these relationships were allegedly damaged; EpicentRx did not satisfy this obligation and as a result, Bianco only learned of InterWest as a potential witness with respect to damages upon reading EpicentRx's opposition brief. Doc. No. 87 at 10.

However, it does not appear to the Court that EpicentRx offers any evidence from InterWest on the subject of damages. Arguments in briefs are not evidence. *See Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("[T]he arguments and statements of counsel 'are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment.'" (quoting *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) (per curiam)). Given that InterWest was a known investor, in the absence of any evidence from InterWest on damages, it appears that there is no prejudice to Bianco at this time. Accordingly, the Court **DENIES** Bianco's motion for sanctions as it relates to InterWest as a witness on the issue of damages without prejudice.

Next, Bianco seeks to exclude information and evidence regarding "AVV." So far as the Court can surmise from EpicentRx's opposition brief, EpicentRx's contends it lost out on an investment from AVV as a result of Bianco's conduct. *See* Doc. No. 78 at 7; SS No. 74. AVV was not identified in the Complaint by name or by way of initial disclosure, nor was AVV identified in response to Bianco's interrogatories. Carvalho Decl. Ex. 4, Interrogatory No. 7. Bianco contends he learned of AVV's identity when EpicentRx filed its since-withdrawn motion for partial summary judgment. Doc. No. 87 at 10. EpicentRx also references AVV in its opposition brief, and there is some evidence to this effect. Doc. No. 78 at 7; Caroen Decl. ¶ 10.

The Court rejects EpicentRx's suggestion that its failure to disclose any witness, including AVV, is harmless because "discovery was already closed when the responses were served" and so "Defendant would not have been able to depose any additional

witnesses." Doc. No. 94. The argument is problematic on these facts for numerous reasons, but for the sake of time the Court merely reiterates that a party's Rule 26 obligations are not triggered by a discovery request but are automatic and mandatory. Fed. R. Civ. P. 26(a)(1)(A)(i).

Having surveyed EpicentRx's various explanations for how its failure to disclose AVV was harmless, the Court finds all of them are without merit. EpicentRx plainly pleaded that its relationships with its investors were damaged by Bianco's conduct and now seeks to surprise everyone to this litigation by identifying one such investor in opposition to summary judgment. This case has been pending for over two years and ample time for discovery was afforded. And yet no meaningful discovery was conducted on the issue of lost investments. Nonetheless, now, in opposition to summary judgment, EpicentRx argues and offers evidence of a reneged mystery deal with AVV. Bianco was unable to depose or obtain any discovery from AVV as a result of EpicentRx's violation of Rule 26, and this issue cannot be cured at this stage of the litigation. EpicentRx's failure to identify AVV is at the very least a willful circumvention of its obligations under Rule 26. The Court finds that EpicentRx has not met its burden of demonstrating that its violation of Rule 26 was harmless or substantially justified. No less drastic sanction than exclusion is warranted on this record. Accordingly, the Court **GRANTS** Bianco's motion for sanctions and excludes all evidence and information pertaining to AVV on the issue of damages.

As to Meaghan Stirn, Ms. Stirn either is or was an employee of EpicentRx. Contrary to EpicentRx's position, *see* Doc. No. 94 at 13, EpicentRx does offer evidence from Ms. Stirn in opposition to summary judgment in the form of her testimony during trial in a separate case, Doc. No. 78-1 ("Boock MSJ Decl.") Ex. G. EpicentRx did not disclose Ms. Stirn as a potential witness, but it appears plain that Bianco knew of Ms. Stirn's identity as it sought information about her at least by way of interrogatory. Carvalho Ex. 4, Interrogatory No. 17. EpicentRx objected to this interrogatory, simply stating that it "will not respond." *Id.*

EpicentRx explains in opposition that Dr. Oronsky identified Ms. Stirn as a witness with knowledge of damages during his deposition; when Dr. Oronsky was asked if Dr. Carson's resignation "cause[d] any existing investors to withdraw," he responded that "it's not my area.  You know, I would ask Megan Stern [sic]."  Doc. No. 94-1 ("Boock R. 37 Decl.") Ex. G at 36:3–8.[9]  But "[t]he rule places the disclosure obligation on a 'party.' That another witness has made a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations."  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014).

While the relevancy of Ms. Stirn's testimony is unknown, the Court finds that on this record, EpicentRx's failure to disclose her identity is harmless.  According to Bianco's own Rule 26 disclosures, Ms. Stirn "c/o Plaintiff's counsel" is a witness. Carvalho Decl. Ex. 1 at 27.  And while Bianco argues that EpicentRx refused to provide any information on her involvement in the events at issue, *see* Doc. No. 87 at 15; Carvalho Decl. Ex. 4, Interrogatory No. 17, there is no argument that Bianco was unable to depose Ms. Stirn or obtain discovery from her.  Accordingly, to the extent Bianco seeks to exclude all evidence from Ms. Stirn, as opposed to merely damages evidence, the Court **DENIES** Bianco's motion to exclude testimony from Ms. Stirn without prejudice.

Finally, Bianco draws the Court's attention to EpicentRx's failure to identify and provide contact information for Dr. Carson.  In its Complaint, EpicentRx refers to an unnamed "highly valued Board member" who resigned allegedly as a result of Bianco's conduct.  Compl. ¶¶ 28, 72; *see also id.* ¶ 66(e) (alleging that Bianco's actions "caused a significant Member of EpicentRx's Board to resign").  At the heart of EpicentRx's damages theory is that this Board member's resignation harmed the company financially

---

[9] All citations to deposition transcripts refer to the pagination assigned by the reporter.

and reputationally. It is now well-understood that this Board member was Dr. Carson. *See* Doc. No. 78 at 7. Yet EpicentRx never disclosed Dr. Carson's identity and contact information as was required by Rule 26(a). Additionally, at least one interrogatory seems directed towards Dr. Carson's identity, but EpicentRx did not meaningfully respond. *See* Carvalho Decl. Ex. 4, Interrogatory No. 7; *see also id.* at Ex. 4, Interrogatory No. 15. Again, Bianco was seemingly not "well aware" of Dr. Carson's identity as the unnamed "highly valued" board member as he only learned of Dr. Carson's identity by way of "informal communication" with EpicentRx's counsel. Doc. No. 87 at 9–10.

In a footnote, Bianco acknowledges that he was nevertheless ultimately able to depose Dr. Carson. *Id.* at 10 fn.4. To that end, both parties offer excerpts from Dr. Carson's deposition transcript, *see* Benedicto Decl. Ex. 14; Boock MSJ Decl. Ex. F, and Bianco does not seek to exclude Dr. Carson's testimony. Rather, Bianco asks for an award of fees and costs incurred in locating Dr. Carson.

The Court is unable to find the discussion of Bianco's request for these costs and fees "*infra*." Doc. No. 87 at 10 fn.4. To be sure, the only mention of expenses, fees, or costs, is in connection with Bianco's request under Rule 37(c)(2) for EpicentRx's failure to respond to the RFAs. Because Bianco fails to support his request for costs and fees associated with locating Dr. Carson, the Court **DENIES** his motion for sanctions as it relates to Dr. Carson.

### 2. *Receipt of Statements and Bianco's Actions*

Bianco also seeks to exclude evidence of any person (apart from those identified in the Complaint and through written discovery) who allegedly received the documents in question. Doc. No. 87 at 16. Further, he seeks to exclude evidence of alleged statements or inactions by Bianco not alleged in the Complaint or in written discovery. *Id.*

Bianco has not demonstrated that this information was subject to disclosure under Rule 26(a) and (e) and it is not clear what persons, statements, and inactions Bianco seeks to exclude. Accordingly, the Court **DENIES** Bianco's motion for sanctions as it relates to requests (2) and (3) identified on page 4 of his motion without prejudice.

*3.* *Damages Evidence*

Rule 26 requires that a party's initial disclosures include a "computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii). "A computation of damages may not need to be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff. As discovery proceeds, however, the plaintiff is required to supplement its initial damages computation to reflect the information obtained through discovery." *Cleveland v. Behemoth*, No. 3:19-cv-00672-RBM-BGS, 2022 U.S. Dist. LEXIS 183714, at *4 (S.D. Cal. Oct. 6, 2022) (quoting *LT Game Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-cv-01216-GMN, 2013 U.S. Dist. LEXIS 11835, at *16 (D. Nev. Jan. 28, 2013) (internal quotation marks omitted)). Moreover, the Rule "contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *Silver State Broad., LLC v. Beasley FM Acquisition*, No. 2:11-CV-01789-APG-CWH, 2016 U.S. Dist. LEXIS 8904, at *14 (D. Nev. Jan. 25, 2016) (quoting *Allstate Ins. Co. v. Nassiri*, No. 2:08-CV-00369-JCM-GWF, 2011 U.S. Dist. LEXIS 79866, at *4 (D. Nev. July 21, 2011); itself citing *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003), *aff'd* 705 F. App'x 640 (9th Cir. 2017)); *see also Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021) ("Rule 26(a)(1)(A)(iii) contemplates damages computation analysis and explanation."). A plaintiff "cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages." *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593–94 (D. Nev. 2011). Defendants are not required to compute damages, "Rule 26 requires plaintiffs to do so." *Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1129 (D. Nev. 2011). Where a failure to provide a computation of damages was not substantially justified or harmless, courts have granted motions to exclude evidence of those damages under Rule 37(c)(1)'s automatic sanction. *See, e.g., Hoffman*, 541 F.3d

at 1179–80; *Grouse River Outfitters*, 848 F. App'x at 244 (concluding district court did not abuse its discretion in excluding evidence of damages where plaintiff did not adequately disclose damages computation).

It appears on this record that EpicentRx never attempted to provide a computation of damages, either initially or by way of a supplemental disclosure.  EpicentRx did not even provide a "lump sum statement of damages," much less "a more detailed specification of damages" beyond "the broad types of damages" it claims.  *Tutor-Saliba*, 218 F.R.D. at 221 (internal citation and quotation marks omitted).  Because EpicentRx did not comply with Rule 26(a)(1)(A)(iii) and 26(e), evidence of damages is subject to exclusion pursuant to Rule 37(c)(1) unless EpicentRx can demonstrate its failure is substantially justified or harmless.

EpicentRx's response is devoid of a meaningful opposition to this request for exclusion.  To begin, EpicentRx's asserted justification is essentially that it need not offer a computation of damages because that is the realm of an expert and "Bianco will be able to depose EpicentRx's expert on the amount, methodology, and computation of damages."  Doc. No. 94 at 5.  EpicentRx's position is not only untenable for the reasons discussed above, but it also wholly ignores the fact that EpicentRx is required by Rule 26 to provide a computation of damages or otherwise offer some analysis or information such that Bianco could understand his potential exposure and make informed decisions as to settlement and discovery.  *Tutor-Saliba*, 218 F.R.D. at 221.  Its asserted "detailed description" of damages exchanged during discovery is merely a list of types of damages, not a computation or other attempt at a meaningful analysis.  *See* Doc. No. 94-1 at Ex. A.  Further, the list includes some damages that are plainly calculable (i.e., lost value and time of licensing rights, unpaid licensing fees, litigation expenses) and also notably omits the asserted lost investment and reputational harm EpicentRx actually seeks.  EpicentRx also incorrectly suggests again that it is Bianco's responsibility to seek this information, *see* Doc. No. 94 at 4, which in any event, he did, *see* Carvalho Decl. Ex. 4, Interrogatory No. 6.

1      EpicentRx points out that Dr. Oronsky testified Bianco should ask Ms. Stirn and

2   Dr. Brinkhaus about its claimed damages in the form of lost investments.  Benedicto

3   Decl. Ex. 17 at 36:3–8.  EpicentRx also notes that Bianco deposed Dr. Brinkhaus, who

4   "testified about damages."  Doc. No. 94 at 9; *see also* Boock R. 37 Decl. Ex. H.  But that

5   other persons had some knowledge of EpicentRx's damages, or perhaps testified about

6   damages, does not cure EpicentRx's failure to disclose what it intends to seek at trial—

7   that is, a dollar amount and how EpicentRx came up with that figure.  *Cf. Ollier*, 768 F.3d

8   at 863 (discussing Rule 26 witness disclosures).  To that end, it appears plain on this

9   record that EpicentRx did not produce a witness with knowledge of damages as was

10  requested by Bianco's Rule 30(b)(6) notice.  *See* Carvalho Decl. Ex 6.  Instead, the

11  parties seemingly agreed that EpicentRx would provide interrogatory responses on the

12  issue of damages.  *See* Carvalho Decl. Ex. 8.  EpicentRx never provided these responses.

13      "The theory of disclosure under the Federal Rules of Civil Procedure is to

14  encourage parties to try cases on the merits, not by surprise, and not by ambush."  *Ollier*,

15  768 F.3d at 862.  Evidence of damages would, at this stage, be an ambush.  Damages is a

16  prima facie element of all of EpicentRx's claims.  Not only does the Rule 26 computation

17  of damages disclosure requirement serve to enable a defendant to understand his

18  exposure but where, as here, damages is a prima facie element of the claims, receiving a

19  meaningful computation of damages and some analysis in support of those figures is

20  necessary for a defendant to prepare a defense.  Moreover, Rule 37 is self-executing and

21  automatic so as to "provide a strong inducement for disclosure of material."  *Yeti*, 259

22  F.3d at 1106 (cleaned up).  "The implementation of the sanction is appropriate 'even

23  when a litigant's entire cause of action . . . will be precluded.'"  *Hoffman*, 541 F.3d at

24  1180 (quoting *Yeti*, 259 F.3d at 1106) (cleaned up).

25      Here, EpicentRx failed to meet its Rule 26 obligations with respect to damages and

26  similarly fails to demonstrate that its violation of Rule 26 was either harmless or

27  substantially justified.  It is clear on this record that EpicentRx largely flouted its Rule 26

28  obligations, including those with respect to damages, and allowing EpicentRx to now

offer evidence of damages at summary judgment would be highly prejudicial to Bianco and unduly incentivize plaintiffs engage in such misconduct.  EpicentRx's violation was at least willful.  EpicentRx repeatedly attempted, and continues to attempt, to justify its failure with the explanation that it will not provide a computation because that is the realm of an expert.  *See* Doc. No. 94 at 4 ("EpicentRx provided a detailed description of what comprised its damages in discovery, but it did not provide a computation of the amount, as it will be provided by an expert witness on damages. Indeed, EpicentRx objected to the discovery seeking information on damages, based in part on the fact that it called for expert opinion.").  But EpicentRx never disclosed an expert, nor did it rectify any previous mistake in this respect.  So this continued position is strongly indicative of bad faith.

The Court declines EpicentRx's passing invitation to reopen discovery.  EpicentRx did not move under Rule 56(d) for additional time for discovery to oppose summary judgment but only now seeks an extension of unknown duration and scope to cure its violations.  EpicentRx does not ask for a lesser sanction, or offer any suggestions as to what lesser sanction would be appropriate here, and the Court does not find that any lesser sanction than exclusion is warranted.  *See Merchant*, 993 F.3d at 742.  EpicentRx effectively played hide the ball during discovery.  Its Rule 26 violations were not isolated incidents but wholesale.  EpicentRx pleaded it lost investments from Bianco's conduct and yet made no attempt to provide Bianco with a figure it assigned to these losses.  There is now some tangential evidence in the summary judgment record of a lost investment from AVV and perhaps a lost deal from a company called Dynavax.  These asserted losses are not, as EpicentRx maintains, exclusively within the realm of an expert but rather are easily calculable.  Absolutely no discovery was taken or exchanged to develop the record on these damages.  As a direct result of EpicentRx's failures with respect to damages, and position that evidence of damages from an expert is forthcoming, the Court has a totally disjointed record of EpicentRx's claimed harm(s).  This simply cannot now be cured.  BNSK seeks to withdraw from the case and Bianco's summary

judgment motion is ripe for disposition.  To reopen discovery would essentially start this case anew: EpicentRx would need to obtain new counsel, *see* CivLR 83.3.j, and provide adequate disclosures, depositions and other fact discovery would need to be propounded on the previously unidentified damages witnesses, and Bianco would be entitled to the opportunity to examine the documents—to date unknown—supporting the asserted lost deals.  The Court will not reward this conduct with another bite at the apple.  Therefore, the Court **GRANTS** Bianco's motion and excludes EpicentRx's evidence of damages.

**D.    Failure to Admit**

Rule 36(a)(1) provides that a party may serve on any other party a request to admit the truth of any discoverable fact.  Fed. R. Civ. P. 36(a)(1).  "[T]he purpose of requests for admission is to narrow the issues for trial by identifying and eliminating those matters on which the parties agree."  *O. L. v. City of El Monte*, No. 2:20-cv-00797-RGK (JDE), 2021 U.S. Dist. LEXIS 227436, at *9 (C.D. Cal. Feb. 8, 2021) (citing *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).  "Parties may not view requests for admissions as a mere procedural exercise requiring minimally acceptable conduct."  *Marchand v. Mercy*, 22 F.3d 933, 936 (9th Cir. 1994).  Rule 37(c)(2) is the enforcement mechanism for Rule 36, providing: "If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof."  Fed. R. Civ. P. 37(c)(2).  Rule 37(c)(2) thus "mandates an award of expenses unless an exception applies" and therefore "encourages attorneys and parties to identify undisputed issues early to avoid unnecessary costs. Failure to identify those issues wastes the resources of parties and courts."  *Marchand*, 22 F.3d at 936.

In support of his motion for sanctions, Bianco offers EpicentRx's responses to his RFA, Set One.  Carvalho Decl. Ex. 5.  EpicentRx responded to every RFA with a host of general objections and the statement "EpicentRx will not respond to this request."  Having reviewed all eleven RFAs, the Court finds none are objectionable or involve

issues subject to reasonable dispute.  All relate to background information that is relevant to the history of the parties' and their relationship.  None seek to have EpicentRx to make an admission that would undermine its claims.  For example, Bianco asked EpicentRx to admit that various persons served on EpicentRx's Board of Directors or as an EpicentRx Officer.  EpicentRx's categorical refusal to respond to these very basic RFAs is unacceptable and unexcused on this record.

However, the Court finds that Bianco fails to identify which of these requests it has proven and what expenses were incurred.  Accordingly, the Court **DENIES** Bianco's motion for Rule 37(c)(2) sanctions.

### IV. SUMMARY JUDGMENT LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the "outcome of the suit" under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial.  *See Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252; *see also Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1159 (C.D. Cal. 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").  Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment.  *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1103 (9th Cir. 2000).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party.  *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

Further, in assessing a party's motion for summary judgment, a "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3) (a district court "need only consider only the cited materials"); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (district courts are "not required to comb the record to find some reason to deny a motion for summary judgment").  Rather, it is the obligation of each party to cite to "particular parts of materials in the record" or otherwise show that "the materials cited do not establish the absence or presence of a genuine dispute" in their briefing.  Fed. R. Civ. P. 56(c)(1).

//

1

## V. DISCUSSION

2       The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332,

3   and therefore applies the substantive law of the forum state, California, to Plaintiff's

4   claims.  *See St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864, 867 (9th Cir.

5   1979).

6       The Court begins with the end: damages. Damages of some nature is a prima facie

7   element of all four of EpicentRx's claims. *See Oasis W. Realty, LLC v. Goldman*, 124

8   Cal. Rptr. 3d 256, 263 (Cal. 2011) ("The elements of a cause of action for breach of

9   fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and

10  damages."); *Youst v. Longo*, 233 Cal. Rptr. 294, 298 n.6 (Cal. 1987) ("The five elements

11  for intentional interference with prospective economic advantage are: (1) an economic

12  relationship between the plaintiff and some third party, with the probability of future

13  economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship;

14  (3) intentional acts on the part of the defendant designed to disrupt the relationship;

15  (4) actual disruption of the relationship; and (5) economic harm to the plaintiff

16  proximately caused by the acts of the defendant."); *Venhaus v. Shultz*, 66 Cal. Rptr. 3d

17  432, 435–36 (Cal. Ct. App. 2007) ("The tort of negligent interference with prospective

18  economic advantage is established where a plaintiff demonstrates that (1) an economic

19  relationship existed between the plaintiff and a third party which contained a reasonably

20  probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the

21  existence of the relationship and was aware or should have been aware that if it did not

22  act with due care its actions would interfere with this relationship and cause plaintiff to

23  lose in whole or in part the probable future economic benefit or advantage of the

24  relationship; (3) the defendant was negligent; and (4) such negligence caused damage to

25  plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost

26  in whole or in part the economic benefits or advantage reasonably expected from the

27  relationship."); *Muddy Waters, LLC v. Superior Court*, 277 Cal. Rptr. 3d 204, 221 (Cal.

28  Ct. App. 2021) ("At a minimum, a trade libel cause of action requires: "(1) a publication;

(2) which induces others not to deal with plaintiff; and (3) special damages.").

Pursuant to Rule 37(c), for the reasons discussed above, EpicentRx cannot now offer evidence of damages.  Its violation of Rule 26(a)(1)(A)(iii) was at least willful and no lesser sanction is requested or warranted.  As a result, all four of EpicentRx's claims fail and Bianco is entitled to summary judgment.  For this reason, the Court **GRANTS** Bianco's motion in its entirety.  Nonetheless, even assuming the Court considers EpicentRx's evidence of damages, its claims still fail.

## A.     Breach of Fiduciary Duty

EpicentRx's first cause of action is for breach of fiduciary duty.  The elements of a claim for breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Parrish v. NFL Players Ass'n*, 534 F.Supp.2d 1081, 1097 (N.D. Cal 2007) (internal citations omitted); *see also Shopoff & Cavallo LLP v. Hyon*, 85 Cal. Rptr. 3d 268, 285 (Cal. Ct. App. 2008).

It is undisputed that EpicentRx was a shareholder of Prothex and therefore that Bianco owed it fiduciary duties as a corporate officer of Prothex.  Here, the dispute concerns whether Plaintiff may proceed with a derivative or direct claim against Bianco, or both.  Bianco argues that "[t]he fiduciary claim pled by EpicentRx is derivative, not direct, and EpicentRx has not pled a derivative claim."  Doc. No. 68 at 17.  EpicentRx contends that it pleaded and has evidence in support of both.  Doc. No. 78 at 8–10.

"The propriety of bringing a direct versus derivative claim is governed by the law of the state of incorporation."  *Yeung v. Advanced Biologics, LLC*, No. 17-cv-1510-JAH-JMA, 2019 U.S. Dist. LEXIS 141341, at *9 (S.D. Cal. Aug. 20, 2019) (citing *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000)); *see also N.Y.C. Emps. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010) ("The characterization of a claim as direct or derivative is governed by the law of the state of incorporation.") *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  The parties point to Delaware law on this issue and so the Court assumes that Prothex was incorporated under the laws of Delaware.

"Under Delaware law, the classification of an action as direct or derivative is 'based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?'"  *Lee v. Fisher*, 70 F.4th 1129, 1139 (9th Cir. 2023) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)).

> Under this test, a "derivative action" is one brought "on behalf of the corporation for harm done to the corporation," while a "direct action" is one where "the stockholder has demonstrated that . . . she has suffered an injury that is not dependent on an injury to the corporation." The "[p]laintiffs' classification of the suit is not binding," but rather a court must "independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification,"

*Id.* at 1139–40 (quoting *Tooley*, 845 A.2d at 1035–36) (internal citations omitted).

An independent examination of EpicentRx's claim reveals that it is a direct claim and not derivative in nature.  The Court agrees with Bianco that Plaintiff seemingly pleaded a derivative claim: EpicentRx pleads that Bianco's actions, namely, proposing competing offers to EpicentRx, were in his own interest and not those of the shareholders, generally, *see* Compl. ¶¶ 52–54.  However, it is clear that there is no asserted harm on behalf of shareholders, generally.  Rather, the asserted wrong here is that Bianco did not "legitimately entertain EpicentRx's offer," but instead countered with proposals that would have EpicentRx "pay an inflated amount" and put Prothex management in charge.  Doc. No. 78 at 6.  To be sure, there is no indication or suggestion that Prothex shareholders were harmed by these mere proposals.  Moreover, EpicentRx's theory of damages, which is premised upon Dr. Carson's resignation, is unique to EpicentRx and only EpicentRx stands to benefit from this action.  Therefore, to the extent EpicentRx pleaded a derivative breach of fiduciary duty claim, Bianco is entitled to summary judgment.

As to EpicentRx's direct claim, California has codified the internal affairs doctrine. Cal. Corp. Code § 2116; *see also Villari v. Mozilo*, 208 Cal. App. 4th 1470, 1478 n.8

(Cal. Ct. App. 2012) ("Corporations Code section 2116 codifies [the internal affairs doctrine] in California.").  Here, the Court finds that Plaintiff's breach of fiduciary duty claim falls within this doctrine and therefore applies Delaware law.  *See Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985) ("Claims involving "internal affairs" of corporations, such as the breach of fiduciary duties, are subject to the laws of the state of incorporation.") *superseded by statute on other grounds*.  "[C]orporate officers owe fiduciary duties that are identical to those owed by corporate directors."  *Gantler v. Stephens*, 965 A.2d 695, 708 (Del. 2009).

EpicentRx pleaded that Bianco breached his fiduciary duties by "ignoring [EpicentRx's] LOI and/or actively encouraging others to do so."  Compl. ¶ 52.  But this allegation is unsupported on this record and contradicted by the evidence.  Prothex signed EpicentRx's LOI.  SS No. 26; Bianco Decl. ¶ 26.  So it was not ignored.  Rather, the true asserted breach here was Bianco's authoring of the IOI (and the attached Powerpoint slide deck).  According to EpicentRx, Dr. Carson resigned from the Board after receiving the IOI, and Dr. Carson's resignation resulted in reputational harm and lost investments.  But even assuming the information in the IOI was inaccurate, merely taking offense to a competing proposal can hardly be described as a breach of fiduciary duty proximately resulting in damage.

Under Delaware law, corporate officers and directors are charged with upholding a "triad" of fiduciary duties: good faith, loyalty, and due care.  *See, e.g.*, *Cede & Co. v. Technicolor*, 634 A.2d 345, 360 (Del. 1993) (first citing *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d 53, 64 (Del. 1989); then citing *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985); and then citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).  The duty of loyalty prohibits corporate officers from "us[ing] their position of trust and confidence to further their private interests" and "demands that there be no conflict between duty and self-interest."  *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).  The duty of care requires officers to act on an informed basis.  *Cede*, 634 A.2d at 367.  "Delaware courts have declined to offer an exhaustive definition of bad faith."  *City of*

*Coral Springs Police Officers' Pension Plan v. Dorsey*, No. 2022-0091-KSJM, 2023 Del. Ch. LEXIS 107, at *22 (Del. Ch. May 9, 2023); *see also Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*, 906 A.2d 27, 65 (Del. 2006) ("To engage in an effort to craft . . . a definitive and categorical definition of the universe of acts that would constitute bad faith would be unwise.") (internal quotation marks omitted).  However, the Delaware Supreme Court has described a non-exhaustive set of circumstances forming a failure to act in good faith:

> A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties. There may be other examples of bad faith yet to be proven or alleged, but these three are the most salient.

*Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006) (quoting *In re Walt Disney*, 906 A.2d at 27).

Having scoured the record, the Court finds the evidence on this issue is as follows. Dr. Reid states that he was shocked at the "ridiculous IOI," which proposed that EpicentRx would pay an "overvalued sum" for Prothex's assets.  Doc. No. 78-2 ("Reid Decl.") ¶ 8.  Dr. Reid also summarily states that the proposal failed to consider "the best interests of Prothex and the shareholders," Reid Decl. ¶ 8, and that in his view, "the IOI very clearly was not to the benefit of Prothex's shareholders," Reid Decl. ¶ 9.  Caroen speaks to the accuracy of the information contained in the First and Second LOIs, Caroen Decl. ¶ 13, but does not provide evidence as to how authoring these proposals amounted to a breach.  EpicentRx Officer Dr. Brinkhaus found the proposals "ridiculous" and "illegitimate," and explains that he had a "hearty laugh" upon reviewing the offer. Benedicto Decl. Ex. 15 at 83:23–84:17, 104: 14–16, 105:12–18, 112:8–113:6.

The bald assertion that Bianco acted in his own self-interest by authoring the IOI is insufficient to overcome summary judgment on this record.  EpicentRx categorically

rejected the IOI and so did not pay an "overvalued sum." And while EpicentRx Officers found the proposals comical, simply saying they were "ridiculous" is not sufficient evidence that Bianco's drafting of these proposals was in breach of his fiduciary duties to Prothex shareholders. Missing from the record is evidence supporting EpicentRx's belief that the offers were contrary to the interests of Prothex. It is undisputed that Bianco crafted these competing offers with the help and encouragement of various individuals and entities. InterWest partner Kliman and EpicentRx investor and former Director Brown were supportive of Bianco's proposals and involved in the process. Tempel Decl. ¶¶ 13–15; Bianco Decl. ¶¶ 18–20. And the IOI was based on investment bank Raymond James' valuation of Prothex, and Raymond James was to underwrite the IPO. Bianco Decl. ¶¶ 8–9, 19. Even accepting EpicentRx's Officers' opinions that the proposals were ridiculous, there is simply no evidence as to how the proposals were illegitimate or improper—i.e., that the valuation was actually incorrect or inflated—such that a reasonable jury could find Bianco was disloyal, uninformed, or acted in bad faith.

And to the extent EpicentRx takes issue with Bianco's retention of Prothex personnel over the proposed combined entity, the record demonstrates Bianco's rationale: Prothex had an experienced team with a history of successful clinical trials and commercial drug launches. *See, e.g.*, Tempel Decl. ¶ 4; Bianco Decl. ¶ 5. EpicentRx might disagree, but that does not create a triable dispute as to whether Bianco *believed* Prothex management was better suited to run the combined company.

On this record, Bianco had a "rational business purpose" for authoring the proposals, and where a decision can be attributed to a rational business purpose, and a shareholder plaintiff does not demonstrate otherwise, a court "will not second-guess these business judgments." *Cede*, 634 A.2d at 361. Accordingly, because EpicentRx fails to raise a genuine dispute of material fact as to whether Bianco breached his fiduciary duties to EpicentRx, as a shareholder of Prothex, by authoring the competing proposals, Bianco is entitled to summary judgment on EpicentRx's first claim. For this reason as well, the Court **GRANTS** Bianco's motion for summary judgment.

**B.    Intentional Interference with Prospective Economic Advantage**

"To prove the tort of intentional interference with prospective economic advantage, a plaintiff must establish 'the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff.'" *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 213 Cal. Rptr. 3d 568, 570 (Cal. 2017) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 2d 29, 54 (Cal. 2003)).  The claim has five elements:

> (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action.

*Id.* at 572.

Bianco points to the lack of evidence on the existence of an economic relationship, intent to disrupt that relationship, actual harm, and damages.  The Court finds that EpicentRx's evidence offered in opposition is insufficient to overcome summary judgment on this claim.

Among the pages excerpted from Bianco's deposition, EpicentRx offers one page wherein "the Austrians" and "ABB" are referenced.  Boock MSJ Decl. Ex. B at 271.  There is no typographical correction such that the Court should read "ABB" as "AVV," nor does EpicentRx argue as much.  Nevertheless, viewing the evidence in EpicentRx's favor, the Court draws the inference that this evidence demonstrates Bianco's awareness of EpicentRx's relationship with AVV.  *See* SS No. 74.

In support of damages, EpicentRx offers declarations from Caroen and Dr. Reid.  Both Caroen and Dr. Reid make numerous statements "upon information and belief."  To the extent their knowledge of the facts is based upon information and belief and not personal knowledge it is not summary judgment evidence.  Where the declarant lacks

personal knowledge of the facts stated, the declarations are entitled to no weight.  *Taylor v. List*, 880 F.2d 1040, 1046 n. 3 (9th Cir. 1989) ("To raise such a[ triable] issue, the statement would have to be made on personal knowledge, not information and belief."); *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1251 (C.D. Cal. 2003) ("Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment."); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007); *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) (affirming district court's exclusion of evidence due to a lack of personal knowledge in a summary judgment proceeding).

That said, personal knowledge can be inferred from a declarant's position within a company or business.  *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000).  And here, both Caroen and Dr. Reid hold high-level positions within EpicentRx, as a Director and Officer, respectively.  Nonetheless, fatal for EpicentRx is that both declarations include the identical introduction that Caroen and Dr. Reid made their declarations "based upon my personal knowledge, *unless stated on information and belief*."  Caroen Decl. ¶ 1 (emphasis added); Reid Decl. ¶ 1.  The logical result is that where their statements follow an "upon information and belief" qualification, they lack personal knowledge.  For this reason, the Court **SUSTAINS** Bianco's evidentiary objections to the following:[10] Caroen Decl. ¶¶ 4 s.1, 10 s.2, 12; Reid Decl. ¶¶ 5 s.3, 9 s.3, 10 s.3, 11.b.iii, 11.b.iv, 11.b.vi, 25 s.1, 25 s.3, 28.

With that in mind, the Court turns to the declarations.  The stated connection between the asserted lost investment from AVV and Bianco's alleged misconduct is Dr. Carson's resignation from the EpicentRx Board of Directors.  Dr. Carson is a leading

---

[10] Because only portions of some paragraphs contain the "upon information and belief" language, the Court identifies the particular information subject to the Court's ruling by sentence where appropriate. For example, the first sentence of paragraph 4 in Caroen's declaration is denoted as "¶ 4 s.1."

The Court also duly rejects all statements "upon information and belief" to which Bianco did not object: Reid Decl. ¶¶ 3 s.2, 15 s.2.

immuno-oncology expert and is highly decorated and well-regarded in the medical, oncology, and pharmaceutical fields. Reid Decl. ¶ 15. Dr. Carson joined EpicentRx as a Director on March 8, 2021. Reid Decl. ¶ 16; Reid Decl. Ex. B. Relevant here, EpicentRx believed Dr. Carson's presence would bring fundraising opportunities. Reid Decl. ¶ 16. In fact, according to Dr. Reid, EpicentRx had planned to publicize Dr. Carson's addition to the Board for that purpose. Reid Decl. ¶ 18.

According to Dr. Carson's deposition testimony, he recognized there was a dispute between EpicentRx and Prothex after participating in a Zoom call among members of the EpicentRx Board and receiving the IOI. Benedicto Ex. 14 ("Carson Depo.") at 13, 21–25. He resigned shortly thereafter, having only been a Director for roughly one month. Reid Decl. Ex. E (Dr. Carson emailing Dr. Reid and Caroen that he was resigning effective immediately on April 14, 2021). Viewing the evidence in the light most favorable to EpicentRx, Dr. Carson's resignation was due at least in part to receipt of the IOI. But even viewing the evidence in EpicentRx's favor, that its high hopes for investment never materialized due to Dr. Carson's resignation is not evidence of lost investment damages.

Caroen states that EpicentRx's relationship with investors became strained after Dr. Carson left, Caroen Decl. ¶ 10, and that there was a noticeable change in EpicentRx's ability to raise funds, both in terms of general interest and the number of investors willing to meet with EpicentRx, Caroen Decl. ¶ 9. He further explains that after Dr. Carson's resignation, there was a period of time where funding became tight and cost-saving measures were employed. Caroen Decl. ¶ 9. Caroen also states that EpicentRx has had to address numerous questions regarding "Defendant's allegations from its Board and investors." Caroen Decl. ¶ 14. Caroen does not state what allegations in particular caused concern among the Board and investors.

According to Dr. Reid, EpicentRx believed that Dr. Carson's addition to its Board of Directors would provide some financial benefit given Dr. Carson's "abilities to directly seek investments" and connect with "potential investors." Doc. No. 78-2 ("Reid

Decl.") ¶ 19.  Dr. Reid similarly offers no explanation as to how Dr. Carson's resignation financially harmed EpicentRx, apart from the statement that it "struggled for a period of time with being able to obtain additional funding."  Reid Decl. ¶ 24.

Despite the surprise reference to AVV in EpicentRx's opposition brief, neither Caroen nor Dr. Reid speak to any lost investment from AVV based upon personal knowledge.  *See* Caroen Decl. ¶ 10; *see also generally* Reid Decl.  Even if the Court accepts that Caroen's familiarity with AVV, *see* Caroen Decl. ¶ 10, is based upon personal knowledge, he offers no clarity on the mystery deal.

And while EpicentRx fails to offer any other relevant evidence in opposition to summary judgment, the Court has reviewed Dr. Oronsky's and Dr. Brinkhaus' depositions transcripts, which EpicentRx offers in opposition to Bianco's motion for sanctions.  Dr. Oronsky testified generally that Dr. Carson's resignation harmed EpicentRx's reputation, and also suggested that EpicentRx was harmed financially because Dr. Carson "has lots of contacts," Boock R. 37 Decl. Ex. G at 30:23, and that he "could have made one call, and we would have gotten investments" *id.* at 31:6–7.  Dr. Oronsky also seems to suggest that there were "specific meetings and specific investors lined up."  *Id.* at 34:14–16.  But the position that Dr. Carson was supposed to bring in investments or otherwise provide some concrete financial benefit to the company was categorically rejected by Dr. Carson himself.  Carson Depo at 30:8–15.  Dr. Carson denied EpicentRx's characterization of him as providing "potential financial endorsement."  Carson Depo 36:23–37:4.  Moreover, Dr. Carson testified that he was neither expected to contribute financially to EpicentRx nor was he expected to go out and find investors.  Carson Depo. 37:14–22.  An EpicentRx Officer saying otherwise, absent else, does not create a genuine dispute of fact.

Dr. Brinkhaus testified generally that Dr. Carson's resignation "did a large amount of damage" to EpicentRx.  Boock R. 37 Decl. Ex. H at 116:16–19.  Dr. Brinkhaus also testified that it was "highly probable" that EpicentRx lost a deal with a company Dr. Carson founded called Dynavax.  *Id.* at 116–122.  Dr. Brinkhaus noted that the

discussions came to an "abrupt halt" after Dr. Carson's resignation, but when probed further, repeatedly instructed counsel to ask Dr. Reid or Dr. Oronsky for more information.  Dr. Brinkhaus estimated that the deal was worth more than $20 million.  *Id.* at 119:18–21.

"A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  *See Anderson*, 477 U.S. at 248.  The Court recognizes that "the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery."  *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999) (quoting *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 487 (Cal. 1955) (internal quotation marks omitted)).  However, under California law, "damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery."  *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 147 Cal. Rptr. 3d 634, 647 (Cal. Ct. App. 2012) (quoting *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367–368 (Cal. Ct. App. 1963) (internal quotation marks omitted)).  Additionally, declarations that are conclusory, ambiguous, or speculative are insufficient evidence to defeat summary judgment where the movant has pointed to evidence showing an absence of a genuine issue of material fact.  *See Nat'l Steel*, 121 F.3d at 502 (holding that conclusory allegations without factual support are insufficient to defeat summary judgement); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).

In moving for summary judgment, Bianco has pointed to the absence of a genuine dispute of fact on the issue whether EpicentRx suffered any actual harm from the asserted intentional interference.  Doc. No. 68 at 21.  In opposition to Bianco's motion for summary judgment, EpicentRx has merely provided declarations from Caroen and

Dr. Reid—a Director and Officer of EpicentRx, respectively.[11]  Both declarations are vague and conclusory at best.  Accepting their statements and viewing this evidence in EpicentRx's favor, Caroen and Dr. Reid merely offer that: EpicentRx hoped Dr. Carson's presence would bring in additional funding, which ultimately did not pan out, and that it was difficult to find investors after Dr. Carson's resignation.  But Dr. Reid also admits that EpicentRx did obtain funding after Dr. Carson's exit.  Reid Decl. ¶ 27.  And in any event, their statements are not evidence of damages from an actual interference with a preexisting relationship with the probability of economic benefit.  Even if the Court ignores the many evidentiary and procedural issues, Caroen's statement in isolated support of AVV's planned investment is conclusory, ambiguous, and insufficient.  Chiefly because proximate cause is a prima facie element and EpicentRx admits that it "cannot know why AVV made that decision."  Doc. No. 78 at 11.  The answer to this question would not be a mystery had EpicentRx duly disclosed the identity of AVV during discovery.  In any event, there is no evidence, or argument for that matter, that AVV was aware of Dr. Carson's resignation or that it saw the Whistleblower Letter, IOI, or LOIs.  Nor is there evidence that its decision to withdraw its investment was due even in part to these events.

Turning to the evidence of Dynavax, which the Court notes was buried in unrelated briefing and neither cited to nor offered by EpicentRX in opposition.  The record is utterly devoid of any other evidence, discussion, or argument regarding this lost deal with Dynavax.  Namely, there is no evidence that Bianco was aware of any preexisting

---

[11] Apart from these declarations, EpicentRx offers the following exhibits: Exhibit A is an EpicentRx press release regarding RRx-001 and has no apparent relevancy to the issues in this case; Exhibits B and C are excerpts from Bianco's February and March 2023 depositions; Exhibit D are three nonconsecutive pages excerpted from Dr. Reid's deposition wherein he discusses Arnold Oronsky's Board seat and the publication of some unknown trial; Exhibit E is a two-page excerpt from Tempel's April 2022 deposition in a different case wherein she seemingly discusses the licensing agreement; Exhibit F is an excerpt from Dr. Carson's deposition; and Exhibit G is an excerpt from Meaghan Stirn's trial testimony in a separate case.  None of these exhibits contain any reference to or relevant discussion of the issue of damages.  All of these exhibits are largely irrelevant.

relationship with Dynavax.  And there is no suggestion or evidence that EpicentRx's relationship with InterWest, or any other investor, was damaged or otherwise resulted in a loss.  Therefore, the Court finds that because EpicentRx fails to raise a genuine issue of material fact as to whether Bianco's actions were the proximate cause of the asserted lost investment from AVV, and whether Bianco was aware of a preexisting relationship with Dynavax, Bianco is entitled to summary judgment.  Accordingly, the Court **GRANTS** Bianco's motion on this basis as well.

**C.    Negligent Interference with Prospective Economic Advantage**

EpicentRx's claim for negligent interference with a prospective economic advantage fails for the same reasons.  The elements of this claim are the same as those for an intentional interference, with the only difference being the level of culpability: intentional interference requires an intentional act whereas negligent interference requires a negligent act.  *See Crown Imps., LLC v. Superior Court*, 168 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2014).  As discussed above, EpicentRx fails to raise a genuine issue of fact as to whether the asserted lost investment from AVV was the proximate result of Bianco's conduct.  EpicentRx also fails to present evidence tending to show Bianco was aware of a preexisting relationship with Dynavax.  Accordingly, Bianco is entitled to summary judgment on EpicentRx's third claim.

**D.    Business Disparagement/Trade Libel**

EpicentRx's fourth claim is for "business disparagement/trade libel."  It is not clear that California law recognizes a claim for "business disparagement."  Rather, claims for trade libel "encompass[] all false or misleading statements concerning the quality of services or product of a business which are intended to cause the business financial harm and do so.'"  *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, No. 2:11-cv-02389-MRP-SS, 2014 U.S. Dist. LEXIS 191187, at *8 (C.D. Cal. Feb. 24, 2014) (quoting *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 641 (Cal. Ct. App. 2001) (internal quotation marks omitted).  To prove trade libel under California common law, a plaintiff must show "(1) a publication, (2) which induces others not to deal with plaintiff,

and (3) special damages." *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988); *see also Muddy Waters*, 277 Cal. Rptr. 3d at 221.  Because "[t]rade libel is not[ ] a true libel and is not actionable as defamation," *id.*, Plaintiffs discussion of the elements of defamation, *see* Doc. No. 78 at 13, are inapposite.[12]

The Court assumes without deciding that the Whistleblower Letter, IOI, and LOIs were "published" by Bianco to persons of than EpicentRx.  Nonetheless, the Court finds that the claim still fails.  "[T]he existence of a specific customer or business entity that refrained from dealing with [EpicentRx] as a result of reliance on the [documents] is an essential factual element of [EpicentRx]'s cause of action for trade libel." *Muddy Waters*, 277 Cal. Rptr. 3d at 221.  EpicentRx points to no person or entity that refrained from dealing with it as a result of receiving the documents Bianco authored.  To be clear, Dr. Carson was an EpicentRx Director, there is no evidence AVV or Dynavax saw the documents nonetheless relied on them in deciding not to invest, *see* Doc. No. 78 at 11, and there is no evidence that any other investors, including InterWest, refrained from doing business with EpicentRx.  Accordingly, as EpicentRx has failed to raise a genuine issue of material fact in this respect, Bianco is entitled to summary judgment on EpicentRx's fourth claim.

**E.   Summary**

The Court finds that Bianco is entitled to summary judgment in its entirety. Because EpicentRx did not comply with Rule 26, and offers no effective explanation as to how its violation was harmless or substantially justified, its evidence of damages is subject to exclusion under Rule 37(c).  As damages is a prima facie element of all four of EpicentRx's claims, Bianco is entitled to judgment.  Moreover, each of EpicentRx's four claims fail for additional reasons.  EpicentRx fails to raise triable issues such that a

---

[12] To the extent EpicentRx seeks to amend his Complaint to add a claim for defamation by way of his opposition, *see* Doc. No. 78 at 5, 12–13, the Court **DENIES** such an implicit request.  The deadline for EpicentRx to amend its pleading was June 20, 2022, *see* Doc. No. 17.  EpicentRx fails to demonstrate good cause to extend the deadline that lapsed over a year and a half ago. Fed. R. Civ. P. 16(b)(4).

reasonable jury could find: (1) Bianco's authoring of the competing proposals amounted to a breach of fiduciary duty; (2–3) the asserted lost investment from AVV was the proximate result of Bianco's authoring of the IOI, LOIs, or Whistleblower Letter, or that Bianco was aware of EpicentRx's preexisting relationship with Dynavax; and (4) any specific customer, or whatever the equivalent may be in this context, refrained from doing business with EpicentRx in reliance on the documents Bianco authored.  For these reasons, the Court **GRANTS** Bianco's motion for summary judgment in its entirety.

## VI. CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Bianco's motion for Rule 37(c) sanctions, *see* Doc. No. 87, and **GRANTS** Bianco's motion for summary judgment in its entirety, *see* Doc. No. 68.  In light of these rulings, the Court **DENIES** BNSK's motion to withdraw, *see* Doc. No. 84, **as moot**.  The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated:  January 4, 2024

HON. MICHAEL M. ANELLO
United States District Judge